FILED 10 OCT 27 9 57 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **FRANKLIN R. LEE,** | Civil No. 09-6220-CL |
| Plaintiff | |
| v. | **REPORT AND RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security | |
| Defendant. | |

CLARKE, Magistrate Judge:

Plaintiff Franklin Lee ("Lee") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision should be affirmed.

1 - REPORT AND RECOMMENDATION

## BACKGROUND

Born in 1971 (Tr. 96),[1] Lee reports a twelfth-grade education (Tr. 112), and work as a security guard between 1990 and 2004. Tr. 109. Lee alleges disability since March 1, 2002 (Tr. 66), due to a learning disorder. Tr. 108. The Commissioner denied Lee's applications initially and upon reconsideration. Tr. 61-72.

An Administrative Law Judge ("ALJ") held a hearing on December 16, 2006. Tr. 306-30. On March 29, 2007, the ALJ found Lee not disabled. Tr. 15-23. The Appeals Council denied review of the matter on July 18, 2009 (Tr. 6-8), and Lee presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 13, 2010 (Docket # 11).

2 - REPORT AND RECOMMENDATION

impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g): 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found that Lee did not engage in substantial gainful activity after his alleged onset

date. Tr. 17. At step two, the ALJ found Lee's borderline to low-average IQ, cognitive disorder, and learning disorder "severe." Tr. 17. The ALJ found that these impairments did not meet or equal a listed disorder (Tr. 18), and found that Lee retained the RFC to perform "simple, repetitive tasks with little variance on a day-to-day basis. The claimant can only limitedly [sic] interact with the public, has minimal reading and writing skills, and is better at visual learning than auditory learning." Tr. 18.

At step four, the ALJ found that Lee had no past relevant work. Tr. 21. The ALJ therefore proceeded to step five, where he found that Lee could perform work in the national economy as a cafeteria attendant, dishwasher, and officer cleaner. Tr. 22. The ALJ therefore found Lee not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id., see also Batson*, 359 F.3d at 1193.

## ANALYSIS

Lee challenges the ALJ's evaluation of his credibility, alleged personality disorder, the opinions of a treating physician and an examining psychologist, and the lay evidence. Lee subsequently asserts that the ALJ should have found him disabled at step five in the sequential proceedings.

### I. Credibility

Lee challenges the ALJ's evaluation of his credibility.

#### A. Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; *see also* SSR 96-7p at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of

credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284. Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B. Analysis

The ALJ found Lee's testimony unsupported by the record. Tr. 19. The ALJ cited Lee's activities of daily living and medical record in support of this finding. Tr. 19-21. Lee challenges the ALJ's citation to the medical evidence in assessing his credibility. Pl.'s Opening Br. 14-16.

#### a. Activities of Daily Living

The ALJ cited Lee's activities of daily living, including his testimony that he listens to music, watches television, helps care for his children, helps prepare meals, and walks to the local store to purchase snacks and cigarettes. Tr. 19. The ALJ may cite a claimant's activities of daily living in assessing a claimant's credibility. *Smolen*, 80 F.3d at 1284. Lee does not challenge the ALJ's findings regarding his activities of daily living, and these findings should be affirmed.

#### b. Medical Record

The ALJ also found that Lee's medical record did not support the extent of his alleged limitations. Tr. 19. The ALJ may not base his credibility determination solely upon the medical record, *Robbins*, 466 F.3d at 883, but the ALJ may cite a claimant's medical record in conjunction with other credibility findings. *Smolen*, 80 F.3d at 1284.

The ALJ's credibility findings discussed Lee's medical record in some detail. Tr. 19-21. The ALJ noted that there was no evidence of trauma showing that symptoms relating to his learning and cognitive disorders worsened. Tr. 19. The ALJ also noted that the record showed no ongoing

treatment for his alleged impairments. The ALJ may consider a claimant's treatment and failure to seek treatment in assessing his credibility. Smolen, 80 F.3d at 1284. This reasoning should be sustained.

In addressing Lee's credibility, Lee contends that examining psychologist Julie Redner, Ph.D., found Lee was in the "borderline" range in terms of his ability to process information and formulate appropriate responses. Pl.'s Opening Br. 15. The ALJ cited and accepted this finding. The ALJ did not reject Dr. Redner's report, instead giving it more weight than the report of examining physician Gale Smolen, M.D. Tr. 20. The ALJ noted Dr. Redner's conclusion that the record suggests Lee might have "low-average to possibly borderline intellectual abilities . . . ." Tr. 20.

Lee also submits that examining psychologist Allison Prescott, Ph.D., found him to have "significant memory problems, and poor concentration and working memory." *Id.* The ALJ rejected Dr. Prescott's report because it was inconsistent with Lee's longitudinal medical record. Tr. 21. As discussed below, *infra*, 10-11, this is a sufficient reason for rejecting an examining medical source's opinion. Lee therefore fails to establish that the ALJ's credibility determination improperly omitted Dr. Prescott's findings.

In summary, the ALJ properly cited the medical record, in conjunction with Lee's activities of daily living, in finding Lee's allegations of disability not entirely credible.

### C.  Credibility Conclusion

The ALJ's finding regarding Lee's credibility should therefore be affirmed.

II.  **Medical Source Statements**

Lee challenges the ALJ's analysis of treating physician Dr. Phillips, and examining psychologist Dr. Prescott.

A.  **Standards: Medical Source Statements**

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). However, when making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In addition, the ALJ must ordinarily give greater weight to opinions rendered by specialists. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5).

B.  **Analysis**

a.  **Treating Physician Dr. Phillips**

General practitioner Jason Phillips, M.D., treated Lee between August 22, 2003, and January 2005. Dr. Phillips did not mention cognitive problems between August 22, 2003, and August 24, 2004. Tr. 177-88. On August 24, 2004, Dr. Phillips noted that Lee reported napping in his bed all day, and assessed "poor sleep hygiene." Tr. 177. On October 1, 2004, Dr. Phillips checked "judgment/insight" and "mood/affect" on a review of systems sheet, and made an illegible

annotation. Tr. 174. Another review sheet on the same date made no psychiatric endorsements or annotations. Tr. 175. On December 22, 2004, Dr. Phillips stated that Lee reported a history of "severe" memory problems, without a diagnosis, and stated that Lee and his wife were afraid for Lee to drive. Tr. 172. Dr. Phillips noted "memory problems per patient's report" on December 29, 2004. Tr. 171. On January 5, 2005, Dr. Phillips noted that Lee reported "very poor" memory. Tr. 169.

Dr. Phillips wrote a letter to the Oregon Department of Health Services ("DHS") on January 27, 2005, stating that Lee had no physical disability, but that he thought there were "grounds for perhaps a mental deficit because of what is possibly mental retardation or very severe untreated Attention Deficit Disorder." Tr. 167. Dr. Phillips continued that, "My general impression is that he probably has a cognitive deficit." *Id.* Dr. Phillips supported this submission by references to Lee's allegedly dangerous driving habits, Lee's frequently getting lost, and his frequent forgetting of medical appointments. *Id.* Dr. Phillips made no "mental retardation" diagnosis, and did not purport to do so.

The ALJ cited Dr. Phillips notes addressing Lee's reports of difficulty sleeping, possible depression, and poor memory. Tr. 20-21. The ALJ also noted that Dr. Phillips recommended that the state revoke Lee's driver's license, following Lee's wife's report that Lee was driving erratically. *Id.*

Lee now contends that Dr. Phillips suggested that Lee "appeared to have cognitive deficits or mental retardation," and that Dr. Phillips "wrote that Lee had problems remembering and keeping appointments and following the doctor's instructions." Pl.'s Opening Br., 19. Lee contends that

9 - REPORT AND RECOMMENDATION

"the ALJ did not mention this opinion, which was error." *Id.* Lee provides no explanation for the significance of this alleged error.

The ALJ cited Dr. Phillips's report that Lee reported memory difficulties. Tr. 20-21. Dr. Phillips made no "mental retardation" diagnosis. Dr. Phillip's January 27, 2004 letter did not make such a diagnosis, and Dr. Phillips chart notes do not reference such a diagnosis. The ALJ need not discuss evidence that is "neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Dr. Phillips's January 27, 2004 letter fails to establish that Lee had a "mental retardation" impairment, and Lee therefore fails to establish reversible error regarding the ALJ's analysis of Dr. Phillip's opinion.

### b. Examining Psychologist Dr. Prescott

Lee also contends that the ALJ improperly rejected the opinion of examining psychologist Allison Prescott, Ph.D.

Dr. Prescott evaluated Lee on February 5, 2006. Tr. 235-41. Dr. Prescott assessed major depressive disorder, social phobia, caffeine intoxication, borderline intellectual functioning, and avoidant personality disorder. Tr. 241. Dr. Prescott concluded that Lee's "job history indicates that he cannot maintain employment," and that, "in a typical employment setting he would show significant deficiencies with remembering instructions, sustained attention, coping with normal work-day stressors, and handling criticism from supervisors." *Id.*

The ALJ discussed Dr. Prescott's opinion. Tr. 21. The ALJ stated that Dr. Prescott did not review Lee's longitudinal medical records, and concluded that Dr. Prescott was unaware of Lee's documented history of cognitive and learning difficulties. *Id.* The ALJ also inferred that Dr.

Prescott consequently ascribed Lee's functional difficulties to a depressive disorder rather than borderline intellectual functioning. *Id.* The ALJ gave greater weight to the opinions of Drs. Blasamo and Redner because they were based upon comprehensive testing and evaluation of Lee's longitudinal record. *Id.* The ALJ also rejected Dr. Prescott's opinion because she examined Lee in conjunction with his application for disability benefits. *Id.*

The ALJ must provide "specific and legitimate" reasons, supported by substantial evidence of record, for rejecting a contradicted examining psychologist's opinion. *Lester*, 81 F.3d at 830. The ALJ's observation that Dr. Prescott's opinion was inconsistent with the overall medical record regarding the manner in which she did not distinguish the effects of Lee's learning and cognitive disorder and his alleged depression constitutes such a reason. The record also supports the ALJ's finding that Dr. Prescott did not have Lee's medical history or records before her. Tr. 235-41. This court must affirm an ALJ's findings where they are based upon "inferences reasonably drawn" from the record. *Batson*, 359 F.3d at 1193. Therefore, the court finds that the ALJ appropriately rejected Dr. Prescott's opinion to the extent that it was inconsistent with the medical record regarding the interplay between Lee's cognitive and learning difficulties and his alleged depression. This reasoning should be affirmed.

However, the ALJ may not reject a medical source opinion simply because the opinion was procured for the purpose of obtaining disability benefits. *Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996). This particular reasoning should not be affirmed. Because the ALJ's remaining reasoning regarding Dr. Prescott is based upon the record and the appropriate legal standards, the ALJ's overall conclusions regarding Dr. Prescott should be affirmed.

### C. Conclusion: Medical Source Statements

For these reasons, the ALJ's findings regarding the medical evidence should be affirmed.

## III. The ALJ's Assessment of Lee's Alleged Personality Disorder

Lee asserts that failed to properly assess his alleged personality disorder at steps two and four of the sequential analysis.

### A. Step Two Analysis

At step two, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. §§ 404.1520 (c); 416.920(c), *see also* 20 C.F.R. §§ 404.1521; 416.921. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. §§ 404.1509; 416.909. However, the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). When the ALJ proceeds beyond step two, and considers all of a claimant's impairments in formulating his RFC analysis, any omission at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 511 (9th Cir. 2007). To establish reversible error at step two in the sequential proceedings, a claimant must show that the ALJ's RFC analysis did not consider the contested step two impairment. *Id.* Mere demonstration of error in the ALJ's step two analysis does not establish reversible error. *Id.*

### B. Analysis: Personality Disorder

Under the standard articulated above, the court considers effects of any omission of Lee's alleged personality disorders in the context of the ALJ's RFC assessment.

That record shows that Dr. Prescott assessed Lee with "avoidant personality disorder." Tr. 241. Examining psychiatrist Dr. Smolen assessed a "schizoeffective disorder," but made no personality disorder diagnosis. Tr. 253. Examining psychologist Dr. Balsamo assessed "Dependent and Schizotypal personality features." Tr. 246.

Drs. Smolen and Prescott did not assess work-related impairments directly corresponding to any of Lee's alleged personality disorders. Tr. 241, 253. Dr. Balsamo commented that Lee's personality traits made him appear "weird" to observers and have "probably contributed . . . to his frequently quitting jobs." Tr. 247. This comment, however, does not establish a work-related limitation. Lee therefore fails to establish that the ALJ committed reversible error by omitting reference to his alleged personality disorder at step two in the sequential proceeding. Lee also fails to establish that the ALJ erred by omitting reference to his alleged personality disorder in the RFC analysis, which was the basis for the ALJ's step four and five findings.

## IV.  Lay Evidence

Lee also contends that the ALJ improperly rejected lay evidence. Lee does not identify what evidence was improperly rejected, or the manner in which the evidence establishes disability. Pl.'s Opening Br. 19.

### A.  Lay Evidence: Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may

not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

### B.     Analysis

Lee's submission to this court does not identify what lay evidence he addresses. Pl.'s Opening Br. 19. His indicated citation refers to the ALJ's discussion of testimony submitted by Lee's wife, Stephanie Lee, and his mother in law, Darlene Reasoner. Tr. 19. The ALJ noted that both testified that Lee requires continual reminding to complete daily tasks "including personal hygiene and performing household chores." *Id.* The ALJ also noted that an unspecified witness described Lee as unable to drive. *Id.* The ALJ's subsequent discussion addresses Lee's own testimony, which is addressed above. The ALJ concluded that the medical evidence did not support the degree of limitation alleged by the lay testimony.

No treating or examining medical source found Lee unable to complete simple tasks or basic hygiene. The ALJ was therefore correct in finding that the medical record contradicted the lay testimony regarding these limitations. The ALJ may properly reject lay testimony for this reason, *Lewis*, 236 F.3d at 512, and this finding should therefore be affirmed. Further, the ALJ correctly noted that while treating physician Dr. Phillips accepted Lee's wife's report that he could not drive (Tr. 21), Dr. Phillips himself did not make an independent clinical finding that Lee's cognitive abilities were limited in driving. Dr. Phillips findings regarding this matter are discussed above and will not be reviewed again. In summary, the ALJ adequately summarized the lay testimony and correctly found the limitations regarding Lee's ability to care for himself unsupported by the record.

However, the court rejects the Commissioner's assertion that the ALJ's rejection of lay testimony should be affirmed because the ALJ found Lee himself not credible. Def.'s Br. 9-10. Where the ALJ has first found a claimant not credible, the ALJ may subsequently reject lay testimony because it essentially reproduces the claimant's testimony. *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009). However, the ALJ herself must make this finding. Here, the ALJ made no such finding. This court cannot now rely upon reasoning the ALJ did not assert. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery*, 332 U.S. 194, 196 (1947)); see also *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Therefore this court cannot uphold the ALJ's analysis of the lay testimony based upon the ALJ's findings regarding Lee's credibility. This court emphatically declines to extend *Valentine* to a situation where the ALJ made no identifiable findings linking the lay testimony to the claimant's credibility. This argument should be rejected.

In summary, the ALJ's rejection of the lay testimony should be affirmed, although the Commissioner's reasoning regarding *Valentine* should be rejected.

## V.     The ALJ's Step Five Findings

Lee finally asserts that the ALJ made erroneous findings at step five in the sequential proceedings. Pl.'s Opening Br. 20  He specifically asserts that the ALJ should have included limitations assessed by Dr. Prescott, namely an alleged inability to respond appropriately to supervision, as well as in his own testimony and that of the lay witnesses, regarding his alleged inability to stay on task, in her hypothetical questions to the vocational expert. *Id.*

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20

C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may draw upon the testimony of a vocational expert, and the ALJ's questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The ALJ presently asked the vocational expert to consider an individual with the limitations expressed in Lee's RFC assessment. Lee fails to show that the ALJ's RFC assessment erroneously omitted any workplace limitations. The ALJ's finding that Lee was not disabled at step five in the sequential evaluation should therefore be affirmed.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Lee did not suffer from disability, and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by November 15, 2010. If objections are filed, any response to the objections are due by December 2, 2010*, see Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and

will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 27 day of October, 2010.

Mark D. Clarke
United States Magistrate Judge

17 - REPORT AND RECOMMENDATION